UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Durio, et al                              Civil Action No. 6:08-0612

versus                                    Judge Tucker L. Melançon

Metropolitan Life Ins. Co.                Magistrate Judge Methvin

## MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by defendant, Metropolitan Life Insurance Company ["MetLife"] [Rec. Doc. 26], plaintiff's Opposition Memorandum, Supplemental Opposition Memorandum and Third Opposition Memorandum [Rec. Doc. 36; 47; 53], and MetLife's Reply Memoranda [Rec. Doc. 41, 49]. Also before the Court is MetLife's Motion to Strike Affidavits [Rec. Doc. 38] and plaintiff's Memorandum in Opposition [Rec. Doc. 44] which the Court will also consider in this Memorandum Ruling. For the reasons that follow, MetLife's Motion for Summary Judgment will be granted in part and denied in part and its Motion to Strike Affidavits will be denied as moot.

*Background*

This action was originally brought on April 10, 2008, by plaintiff, Steven G. Durio, as the Administrator and attorney for the Succession of James E. Durio, against defendant, MetLife, in the 27th Judicial District Court, St. Landry Parish, State of Louisiana. *R.1.* Plaintiff's state court Petition For Monies Due was filed on April 10, 2009 and alleged that MetLife issued two policies, No.

1

791 135 393M and No. 816 400 778A, insuring the life of James E. Durio, who died on November 20, 2007. *Id.* MetLife removed plaintiff's action to this Court by Notice of Removal entered May 6, 2008. *Id.* On February 12, 2009, plaintiff filed a First Supplemental and Restated Complaint, adding additional allegations and praying that judgment be entered against MetLife, "ordering it to pay the full amount of all death benefits due under the Policies... or, in lieu thereof, all damages...." to which plaintiff may be entitled. *R. 13.* Plaintiff filed a Second Supplemental and Restated Complaint on March 31, 2009 deleting all allegations relating to MetLife Policy No. 791 135 393M, leaving only allegations relating to MetLife Policy No. 816 400 778A ("the Policy").

On November 18, 2008, plaintiff filed a second suit in the Twenty-Seventh Judicial District Court for the Parish of St. Landry, State of Louisiana as "Steven G. Durio, Independent Administrator of the Successions of Catherine Richard Durio and James Earl Durio v. BNY Mellon Shareowner Services, No. 08-C-6187-C, " as MetLife's transfer agent. ("BNY Mellon Action"). *Id., Exh. 1.* On February 20, 2009[1], Steven G. Durio, signed a Confidential Settlement Agreement and Release ("Release") in connection with the BNY Mellon Action. *R. 26, Exh. 2, Release.* The Release included the following language pertinent to this suit:

> WHEREAS, Durio commenced an action in the 27th Judicial District Court, Parish of St. Landry, State of Louisiana captioned <u>Steven G. Durio, Independent Administrator of the Succession of</u>

---

[1] It is undisputed that the document's date of "February 20, 2008" is a typographical error.

<u>Catherine G. Durio and James Earl Durio v. BNY Mellon Shareowner Services</u>, Docket number: 08-CV-6187-O (the "Action");

WHEREAS, Durio alleges in the action that BNY Mellon Shareowner Services as Transfer Agent for Metropolitan Life Insurance Company ("MetLife") failed or refused to transfer/deliver 394 shares of MetLife belonging to the Estate of Catherine Richard Durio and James Earl Durio (the "Estate" [sic] to Steven G. Durio as Independent Administrator.

The Release further stated:

> 3. **<u>Durio's Release</u>**. Effective upon execution of this Agreement, Durio, on behalf of himself and the Estate and their agents, heirs, representatives, attorneys, attorney-in-fact, successors and assignees, hereby releases and forever discharges BNYM [The Bank of New York Mellon], BNY Mellon Investor Services, BNY Mellon Shareholder Services and MetLife and each of their respective predecessors, successors, parents, subsidiaries, affiliates and assigns, and each of their respective present and former directors, officers, principals, employees, representatives, attorneys, accountants, insurers, and agents, or any of them, from any and all actions, causes of actions, in law or in equity, suits, contracts, agreements, promises, liability, claims, demands, damages, losses, costs or expenses, of any nature whatsoever, known or unknown, from the beginning of the world through the date of this Agreement.
> . . .
> 6. **<u>Governing Law</u>.** This Agreement and the rights and duties of the Parties hereunder shall be governed by ... the laws of the State of New York, without giving effect to the principles of conflicts of laws that would require the application of the law of any other jurisdiction...."

*Id.*

MetLife filed the instant motion for summary judgment based upon the terms of the foregoing Release executed by plaintiff and BNY Mellon Shareowner Services, as MetLife's transfer agent, in the BNY Mellon Action. *R. 26.*

*Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or

---

[2] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.*

other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## Analysis

MetLife asserts in its motion that it is entitled to dismissal in this action because plaintiff is bound by the terms of the February 20, 2009 Release in the BNY Mellon Action which released and discharged BNY Mellon Shareowner Services and MetLife "from any and all actions, causes of actions, in law or in equity, suits, contracts, agreements, promises, liability, claims, demands, damages, losses, costs or expenses, of any nature whatsoever, known or unknown, from the beginning of the world through the date of this Agreement." MetLife further contends that plaintiff is bound by the Release's Governing Law provision which states that the "Agreement shall be governed by, construed and performed in accordance with the laws of New York...." In the alternative, MetLife argues that this action is barred by a two year statutory limitations period under La. R.S. 22:905/22:177.

Plaintiff argues that because MetLife was neither a party to the Release nor a defendant in the State Action and because there is nothing in the record showing any connection between this matter and the State Action, the terms of the Release do not apply to MetLife in this matter. As to MetLife's alternative argument, plaintiff asserts that La. R.S. 22:905 does not apply to this action as plaintiff has amended his Original Complaint seeking damages based upon detrimental reliance and negligent misrepresentation claims.

*1. The Release*

In support of his position, plaintiff directs the Court to the Louisiana Supreme Court's rulings in *Chabaud v. Sylvester*, 728 S.2d 851 (La. 1999) and *Brown v. Driller, Inc.*, 630 So.2d 741 (La. 1994). In *Chabaud*, the court held that a release of the insurer-defendant appearing as the accident defendant's liability carrier in an automobile accident did not apply to the same insurer-defendant appearing as the UM carrier in subsequent litigation. In *Brown*, the Louisiana Supreme Court considered whether a compromise entered into by an injured worker and his wife precluded the widow's subsequent wrongful death suit against the employer. Although the widow's wrongful death claim alleged that her husband's death resulted from the same injury at issue in the compromise, the court found that this separate, future wrong was not within the scope of the differences that the parties intended to settle by the compromise. *Brown* at 757.

The Fifth Circuit relied on *Brown* in *Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631, 636-637 (5th Cir.,2002) ("*Young II*"), in holding that a release executed in a prior lawsuit, ("*Young I*"), against the same defendants regarding the same account data at issue in the subsequent suit, *Young II*, did not bar the subsequent suit (*Young II*), because the release did not comprehend the future claims. *Young* at 636. In its analysis, the court stated: "A transaction or compromise is a written contract and it is construed according to the same general rules applicable to contracts. *Brown v. Drillers, Inc.*, 630 So.2d 741, 748 (La.1994). As a general rule of construction, '[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.' La. Civ.Code art. 2046; see also *Brown*, 630 So.2d at 748. A supplementary rule of construction governs the interpretation of a compromise agreement; La. Civ.Code art. 3073 provides:

> Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.

La. Civ.Code art. 3073." *Id.*

Applying these principles of construction to the BNY Mellon Release in question, the Court finds that the Release does not preclude this action as a matter of law. The plain language of the Release suggests that only the causes of action against BNY Mellon in the referenced litigation were compromised. The Release purports to settle all claims which "Durio alleges in the action that BNY

Mellon Shareowner Services as Transfer Agent for Metropolitan Life Insurance Company ("MetLife") failed or refused to transfer/deliver 394 shares of MetLife belonging to the Estate of Catherine Richard Durio and James Earl Durio." MetLife was not a party to the State Action. Plaintiff named only BNY Mellon Shareowner Services as a defendant contending that "BNY Mellon has wrongfully received and remains in possession of certain shares of corporate stock in Metropolitan Life Insurance Company belonging to the Estates of Catherine Richard and James Earl Durio." *R. 26, Exh. 1, Petition.* MetLife's reference to the State Action merely states that "BNY Mellon Shareowner Services is MetLife's transfer agent and the State Court Action arose out of BNY Mellon's activity in that capacity." MetLife does not dispute nor offer any evidence contrary to plaintiff's representations that the Release of the State Action claims had no connection to this litigation. *R. 26.*

Also, even though the case at bar was filed at the time the Release was executed, plaintiff states in his affidavit that counsel for MetLife told him that Anthony R. Mancuso, a Vice-President for BNY Mellon who presented the Release to plaintiff, was unaware of this lawsuit when the Release was drafted and executed.[3] *R. 36, Exh. A, Affidavit of Durio, ¶ 17.* With regard to such a claim which was not comprehended at the time the release was executed, the *Young* court stated: "The Louisiana courts appear reluctant to construe a compromise agreement broadly, especially with regard to future claims:

---

[3] MetLife's Motion to Strike does not object to this statement in plaintiff's affidavit. *R. 38.*

'[R]eleases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences. As a result, if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action.' [*Brown v. Drillers, Inc.*, 630 So.2d] at 753." *Young* at 636.

The Court finds that MetLife has failed to establish that the Release in the State Court Action included the parties' intent to settle the differences being asserted in this action. *See, Brown* at 747-48 ("LSA-C.C. Art. 3073 provides that a compromise agreement extends only to those matters that the parties expressly intended to settle and that the scope of the transaction cannot be extended by implication."). As the Release does not apply to the matter at bar, MetLife's contention related to the Release's choice of law provision is moot and it is undisputed that Louisiana law applies to this action.[4]

### 2. Whether The Statue Of Limitations Under La. R.S. 22:905 Precludes This Action

MetLife's alternative argument that the statute of limitations bars this action is based upon La. R.S. 22:905 which states in pertinent part:

No life insurer shall within one year after default in payment of any premium, installment, loan or interest, declare forfeited or lapsed any policy issued or renewed, and not issued upon the payment of monthly or weekly premiums or for a term of one year or less, for non-payment when due of any premium, installment, loan or interest, or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating:

---

[4] In its memoranda, MetLife states that even if New York law does not apply, Louisiana law yields the same results. *R. 26; 41.*

9

(1) The amount of such premium, installment, loan or interest, or portion thereof due on such policy; and

(2) The place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured or the assignee of the policy if notice of the assignment has been given to the insurer, at the last known post office address of such insured or assignee, postage prepaid by the insurer or any person appointed by it to collect such payment, at least fifteen and not more than forty-five days prior to the date when the same is payable.

No policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice. Any payment demanded by such notice and made within the time limit shall be taken to be full compliance with the requirements of the policy in respect to the time of such payment.

... No action shall be maintained to recover under a forfeited policy, unless the same is instituted within two years from the day upon which default was made ....

LSA-R.S. 22:905.[5]

MetLife relies on *First American Bank & Trust v. Texas Life Ins. Co.*, 10 F.3d 332, 334 (5th Cir.1994) in support of its alternative position. In *First American*, the Fifth Circuit was required to determine the notice requirement for lapsing life insurance policies. Texas Life issued a $1 million policy to the insured who, in turn, assigned the policy to First American Bank ("the Bank") as security for a debt. After the life insurance policy came up for renewal in 1988, Texas Life sent the insured notice of the due date. The insured, however, never paid the premium. Sixty days after the due date, Texas Life terminated the policy

---

[5] La. R.S. 22:905 was previously La. R.S. 22:177. La. R.S. 22:177 was renumbered as La. R.S. 22:905 by the Louisiana Legislature during the 2008 Regular Session. See 2008 La. Act 415 (S.B.335).

for non-payment of premium, giving notice of the termination to the insured. Three years later, the insured was killed in an automobile accident, and the Bank made a claim for payment under the policy. The Bank asserted that it never received any notice of the delinquent payment or the termination of the policy, and therefore, the death benefit under the policy was payable.[6] In finding that the "threshold inquiry" was whether proper, timely notice was given, the court held that notice was governed by LSA-R.S. 22:905/22:177. The court stated, "This provision means that, if no notice is given (or if the notice given is defective) the policy automatically extends for one year. This provision is plain on its face and not subject to dispute in the instant matter: Texas Life's failure to give 15 days notice [to the bank as assignee], resulted in a one-year extension of the policy." *Id.* at 335.

Plaintiff initially argues that La. R.S. 22:905 and *First American* are inapposite because plaintiff no longer seeks proceeds under the Policy as alleged in his Original Complaint. In his Second Supplemental and Restated Complaint ("Amended Complaint") plaintiff alleges claims for damages outside the Policy based on detrimental reliance and negligent misrepresentation, "[a]lternatively, in the event that [the Policy] described in paragraph 2 above does not explicitly and by its own terms provide for benefits." *R. 21.* In particular, plaintiff's Amended Complaint alleges that James E. Durio "detrimentally relied" on the

---

[6] The Bank argued that it was unfair to charge an assignee with the knowledge that a policy is in arrears without requiring the insurance company to provide that information.

11

recommendations and assurances made to him by MetLife which were related to the status of the Policy, *R. 13, ¶¶ 10, 11, 13, 14, 16*, and that MetLife negligently misrepresented "the terms and implications of the Policy, the loan, and the accelerated payment plan." *R. 13,* ¶¶ 13, 15, 17. The Court agrees that plaintiff's claims of detrimental reliance and negligent misrepresentation are not governed by La. R.S. 22:905 and MetLife's arguments related to this statute are inapposite to these causes of action.

While plaintiff states in his Opposition Memorandum that "[t]his action no longer seeks policy proceeds," plaintiff has not dismissed his claim for proceeds under the Policy. Rather, in an argument related to his original claim for Policy proceeds, plaintiff argues that the "prescriptive nature of 22:905" does not apply to this case because Durio agreed to MetLife's accelerated premium payment arrangement by which the premiums were paid from the Policy rather than from the insured's "own pocket," and therefore, "the insured was not under an obligation in which it can be understood to default, and cannot actually know when the premium must even be paid, much less if and when it goes unpaid, unless the insurer gives some notice that the policy values have become insufficient for the insurer to do so." As a alternative argument, plaintiff contends that, even if 22:905 applies to the Policy, the commencement of prescription under the statute would be tolled under *contra non valentem.*

Assuming that plaintiff continues to claim that he is entitled to recover proceeds under the Policy, in addition to his claims for detrimental reliance and

negligent misrepresentation, he provides no statutory or jurisprudential support for either argument. Nor has the Court located any such support. Rather, as contended by MetLife, in *First American Bank* the Fifth Circuit clearly stated, "La.R.S. 22:[905/]177 provides: 'No life insurer shall within one year after default in payment of any premium ... declare forfeited or lapsed any policy ...' unless the insurer complies with the statute's notice requirements. This provision means that, if no notice is given (or if the notice given is defective) the policy automatically extends for one year. This provision is plain on its face and not subject to dispute ...." 10 F.3d at 335. The Fifth Circuit further stated, "The statute's language gives no indication that a failure to give notice of termination after that one year should result in another year of extended coverage ... Reason dictates that the policy automatically expire after the one-year extension." *Id.*

The Louisiana Fourth Circuit Court of Appeal relied on *First American Bank* in reaching a similar conclusion in *Ochsner v. IdeaLife Ins. Co.*, 945 So.2d 128 (4th Cir., 2006). There Dr. Ochsner purchased a policy of life insurance issued by Capitol Life Insurance Company, IdeaLife Insurance Company's predecessor. No premiums were paid on the life insurance policy in 1991, and the policy consequently lapsed. *Id. at 130.* Oschner died nine years later in January, 2000. In 2003, his widow made a claim for payment of death benefits under the policy which the insurer denied due to the policy lapse. It was undisputed that no notices of cancellation were sent to Ochsner prior to the lapse of the policy nor during the nine years before Oschner's death. The question

before the court was whether notice is required when nonpayment persists for more than one year. *Id.* at 132. Quoting from *First American Bank*, *supra*, the court stated,"after non-payment of the premiums for one year, a life policy lapses *ipso facto* without the necessity of notice." *Id.* The court further stated:

> Thus, under La. R.S. 22:177, if the insured lives and received no notice of cancellation, he gets free life insurance coverage for a year. If he dies during that year, his beneficiary collects the policy proceeds, subject, perhaps, only to a claim for a pro-rata arrearage in unpaid premiums. This interpretation does not penalize the insured; it favors him and places the risk of loss for a whole year entirely on the insurance company. This is sufficient to achieve the public policy of protecting the insured. We agree with Judge John Minor Wisdom in *First American Bank* that to require the insurance company to send a notice after a year of non-payment is a 'drastic penalty for the failure to do so. Reason dictates that the policy automatically expire after the one-year extension.' 10 F.3d. at 335."

*Id.* at 133-134.

The foregoing jurisprudence makes it clear that after the one year extension of coverage from the date the policy lapsed, provided under 22:905, the insurer may terminate coverage under the policy regardless of its failure to give notice that a premium payment was due. Here, the parties dispute the reason for and the actual date the Policy lapsed, but there is no dispute that the Policy lapsed more than one year before this action was filed.[7] Accordingly,

---

[7] The sworn declaration of MetLife's Senior Technical Claims Advisor, Regina Solomon-Stowe, indicates that the Policy lapsed on April 9, 2002 for lack of premium payment and the Policy continued as Extended Term Insurance until it expired on May 17, 2004. *R. 26-7, Dec. of Regina Solomon-Stowe.* Plaintiff contends that Stowe's April 15, 2009 Declaration contradicts her May 27, 2009 deposition testimony as to whether or not the premium was paid on April 9, 2004. *R. 45.*

plaintiff's claim for proceeds under the Policy, MetLife Policy No. 816 400 778A, were barred under La. R.S. 22:905 one year after the Policy was terminated for failure to pay the premium.

### 3. Plaintiff's Detrimental Reliance and Negligent Misrepresentation Claims

In response to plaintiff's claims of detrimental reliance, MetLife argues that because plaintiff's mother and father are deceased, he cannot prove by a preponderance of the evidence that they relied to their detriment on any representation made to them by MetLife. *R. 37.* Rather, MetLife argues, "the Policy is clear and unambiguous as is the Request for Accelerated Premium and the letter." *Id.* MetLife further contends that plaintiff has "admitted that he was aware of the termination of coverage before his father's death and did not tell him." *Id.* As to plaintiff's claims of negligent misrepresentation, MetLife maintains that these claims prescribed one year after the latest date the injury or damage was sustained, which was May 17, 2004, the date the extended term insurance coverage terminated, four years before this suit was filed. *Id.*

### I. Detrimental Reliance

A cause of action for detrimental reliance is codified at Louisiana Civil Code article 1967. Article 1967 provides: "Cause is the reason why a party obligates himself. A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the

promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable." La. Civ.Code art. 1967 (2008). A claim under this provision is based on promissory estoppel, not tort. *Stokes v. Georgia-Pacific Corp*., 894 F.2d 764, 770 (5th Cir.1990) (detrimental reliance claim is not based on tort).

"'The doctrine of detrimental reliance is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.' *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 59 (La.2005). 'To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance.' *Id*. Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. *Id.* Under Louisiana law, 'the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment.' *Id*." *Audler v. CBC Innovis Inc*. 519 F.3d 239, 254 (5th Cir.2008).

Plaintiff claims in his Amended Complaint that James E. Durio relied to his detriment on the representations made by MetLife in correspondence between Durio and MetLife from April 1993 to August 21, 2002, which

indicated that his life insurance policy was a paid up policy with an accelerated payment arrangement in which future policy dividends and increasing value would automatically be redirected by MetLife to payment of the premiums and his existing and future dividends would be sufficient to cover future premiums. *R. 36*. Plaintiff further claims that because MetLife failed to advise Durio of any problem with the premium payments, Durio relied on the representations in the correspondence and did not question MetLife's failure to respond when he requested information regarding the status of the Policy.

Plaintiff has provided sufficient evidence to establish a prima facie claim for detrimental reliance. The record indicates that MetLife represented in correspondence to Durio that the Policy was "on the Accelerated Premium Payment Arrangement" and that "the premium will be paid by a dividend withdrawal so long as dividend balances are sufficient." *R. 36-2, Aff. Of Steven G. Durio, Exh. 3*, *03/31/93 MetLife Corresp*. The correspondence further states that "the policy should have enough dividends and cash value to maintain this policy for the rest of your life. If in the future, it would be feasible to pay some on the loan or the loan interest each and every year, the policy could not possibly lapse." *Id. at 05/10/95 MetLife Corresp*. While MetLife claims that the Policy lapsed in April, 2002, the record indicates that on August 21, 2002, MetLife corresponded with Durio and acknowledged that the Policy's owner and beneficiary had been changed to reflect the death of Durio's wife. *Id. at Exh. 9*. The record further reflects that MetLife failed to provide information related to

17

the status of the Policy despite Durio's requests of such information. *Id. at 4, 05/02/95 Corresp. To MetLife; 5, 05/10/95 MetLife Corresp.; 6, 07/02/02 Corresp. To MetLife.* In correspondence from MetLife Customer Service Center on March 31, 1993 acknowledging that the Policy was on the Accelerated Premium Payment Arrangement, MetLife stated, "[I]f billed premiums are not paid by you within 21 days of the due date, the premium will be paid by a dividend withdrawal so long as dividend balances are sufficient." *Id. at Exh. 3.*

Viewing the evidence in the light most favorable to plaintiff, the Court concludes there exists a genuine issue of material fact as to whether Durio was reasonable in relying on MetLife's representations provided in the foregoing correspondence. MetLife's motion to summarily dismiss plaintiff's claims based on detrimental reliance will be denied.

### ii. Negligent Misrepresentation

"A person commits the tort of negligent misrepresentation when (1) he has a legal duty to supply correct information; (2) he breaches that duty; and (3) his breach causes damages to the plaintiff. The tort can be committed with misinformation or with nondisclosure." *Rogers v. Brooks*, 122 Fed.Appx. 729(5th Cir. 2004) (citing *Society of Roman Catholic Church of Diocese of Lafayette, Inc. v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 742 (5th Cir.1997)). The issue of whether a duty is owed is a question of law. *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1371 (La.1984).

"Louisiana provides a general negligent misrepresentation cause of action where there is a legal duty to provide correct information and the defendant fails to disclose or discloses misinformation. However, in such cases a legal duty to disclose exists only where there was privity of contract or a fiduciary relationship between the parties." *McLachlan v. New York Life Ins. Co.,* 488 F.3d 624, 628 (5th Cir. 2007) (citing *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle,* 68 F.3d 905 (5th Cir.1995). Misrepresentation can occur either when an insurer makes untrue statements to an insured concerning pertinent facts or fails to divulge pertinent facts to the insured. *LSA-R.S. 22:1220, subd. B(1)*.

Here, there is privity of contract between James E. Durio and MetLife. As to the element of misrepresentation, plaintiff alleges that MetLife terminated the Policy without any notice that the Policy values were insufficient to pay premiums, and therefore would be unpaid when due, and that MetLife failed to provide Durio any opportunity to pay the premiums out of pocket before the Policy was terminated.

Without addressing plaintiff's allegations of failure to provide notice to its policyholder, Durio, MetLife maintains that because the Policy was terminated on May 17, 2004, plaintiff's action for negligent misrepresentation is barred by the applicable prescriptive period. Plaintiff urges the Court to apply the doctrine of *contra non valentem* and argues that the commencement of prescription was tolled "until Durio knew or should have known that the premium had not been paid under the accelerated premium payment plan, in the absence of which he

could not possibly have been aware of any nonpayment much less any 'default.'"
*R. 36.*

"The action for negligent misrepresentation arises ex delicto ... and is subject to the one year prescriptive period of Civil Code article 3492...." *National Council on Compensation Ins. v. Quixx Temporary Services, Inc*., 665 So.2d 120, 122 (La.App. 4 Cir. 1995) (internal citations omitted). The one year prescriptive period for delictual actions commences from the date the injury or damage is sustained. *Wimberly v. Gatch*, 635 So.2d 206, 211 (La.1994). This prescriptive statute is strictly construed against prescription and in favor of the obligation sought to be extinguished by it. *Id*.

The doctrine of *contra non valentem* is an exception to the prescription rules, and it suspends prescription when the case satisfies one of four scenarios: 1.) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; 2.) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; 3.) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and, 4.) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. *Id*. The plaintiff bears the burden of showing why the claim has not prescribed. *Id*.

For the reasons cited in the Court's analysis of plaintiff's detrimental reliance claim and viewing the evidence in the light most favorable to plaintiff, the Court concludes there exists a genuine issue of material fact as to whether or not the doctrine of *contra non valentem* applies to suspend plaintiff's negligent misrepresentation claim. MetLife's motion to summarily dismiss plaintiff's claim based on negligent misrepresentation will be denied.

*Conclusion*

Accordingly, MetLife's motion for summary judgment will be granted in part as to its alternative argument that the Policy lapsed under La. R.S. 22:905, and thus, plaintiff's cause of action for the collection of proceeds under the Policy is precluded. MetLife's motion will be denied in part in that: (1) the provisions of the Release executed by plaintiff in the lawsuit entitled *Steven G. Durio, Independent Administrator of the Successions of Catherine Richard Durio and James Earl Durio v. BNY Mellon Shareowner Services*, No. 08-C-6187-C, do not apply to this action; and (2) there are genuine issues of material fact related to plaintiff's claims for detrimental reliance and negligent misrepresentation. MetLife's motion. MetLife's Motion to Strike the Affidavit and Report of Theodore E. Affleck and portions of the affidavit of plaintiff will be denied as moot as the Court does not rely on the Affleck affidavit nor the disputed portions of plaintiff's affidavit in this Memorandum Ruling. *R. 38.*